**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CRYSTAL LYNN LICHT,**

              **Plaintiff,**             **CIVIL ACTION NO. 11-13102**

      **vs.**                    **DISTRICT JUDGE JULIAN ABELE COOK**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

              **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**     **RECOMMENDATION:**  This Court recommends that Plaintiff's Motion for Summary

Judgment (docket no. 8) be denied, Defendant's Motion for Summary Judgment (docket no. 12) be

granted, and Plaintiff's complaint be dismissed.

**II.**     **PROCEDURAL BACKGROUND**

On August 1, 2007 Plaintiff protectively filed applications for a period of disability,

disability insurance benefits, and supplemental security income alleging disability beginning January

10, 2007. (TR 104-13).  The applications were denied and Plaintiff filed a timely request for a *de*

*novo* hearing. On February 22, 2010 Plaintiff appeared with counsel in Flint, Michigan and testified

at a video hearing held by Administrative Law Judge (ALJ) Karen Sayon, who presided over the

hearing from Orland Park, Illinois.  (TR 30-59).  Vocational Expert (VE) Timothy Shaner also

appeared and testified at the hearing.  In an April 30, 2010 decision the ALJ found that Plaintiff was

not entitled to disability benefits because she was capable of performing a significant number of jobs

existing in the national economy.  (TR 24-25).  Additionally, the ALJ found that Plaintiff was not

eligible for Title II benefits because her Date Last Insured was in 2000, while her alleged onset date was not until January 10, 2007. (TR 13). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. The parties filed cross Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.    PLAINTIFF'S TESTIMONY AND RECORD EVIDENCE

### A.    Plaintiff's Testimony

Plaintiff was twenty-eight years old on her alleged disability onset date. (TR 36). She obtained a GED in 2006 and had past part-time employment as a waitress/bartender, cashier, daycare worker, and fast food worker. (TR 37-40, 296). Plaintiff lives in a duplex with her husband and four minor children. (TR 36). She testified that her husband and children do most of the housework, cleaning, and cooking, although she helps cook when she can. (TR 51). Plaintiff testified that she reviews invoices, writes checks, and assists with budgeting for her husband's deejay business. (TR 40-41).

Plaintiff reported that she has fibromyalgia, daily muscle spasms, migraines, chronic pain in her upper and lower back, a cyst in her knee, carpal tunnel syndrome, scoliosis, and depression. (TR 42, 44-45). She testified that between four and twelve days each month her pain is so debilitating she cannot get out of bed. (TR 43). She reports that she gets migraines once or twice a week that last one to three days. (TR 43). She receives shots in her knee two to four times a year, shots in her back, she wears a brace on each hand at night to treat her carpal tunnel syndrome, and she walks with a cane. Plaintiff testified that she takes Xanax, Atenolol, Topamax, Flexeril, Gemfibrozil, Oxybutynin, Lyrica, Vicodin, and Zomig which make it difficult for her to concentrate.

2

(TR 46-47, 52).  She testified that she takes one or two naps each day lasting from thirty to ninety minutes.

Plaintiff stated that she and her husband home school their four children.  (TR 48).  She testified that her sister helps with her children one or two days a week.  Plaintiff testified that she can sit for ten to twenty minutes at a time, stand for ten to fifteen minutes if she is constantly moving, and lift approximately one gallon of milk.

**B.      Medical Evidence**

A Client Assessment from Child and Family Service of Saginaw County dated February 4, 2004 states that Plaintiff has a history of substance abuse with anxiety, irritability, and depression following the recent loss of her step-brother, mother, and unborn child.  (TR 220).  The assessment reports that Plaintiff was having difficulty with her marriage and extended family relationships.  The assessment states that although Plaintiff was depressed and irritable, she was cooperative, calm, with an appropriate affect and intact thought processes.  (TR 222).  It further states that Plaintiff's concentration and recent memory were impaired, and her remote memory and judgment were intact.  (TR 222).  Plaintiff was assigned a GAF of 55.  (TR 223).  A second Child and Family Service Assessment dated May 18, 2004 reports that Plaintiff completed intake and one session only without progress, then cancelled her follow-up session and did not reschedule.  (TR 224).

Dr. Waheed Akbar evaluated Plaintiff on March 22, 2007 for complaints of back and neck pain.  (TR 232).  Dr. Akbar observed that Plaintiff ambulated slowly but satisfactorily, neurologically she was grossly intact in the lower extremities, and straight leg raising was satisfactory bilaterally with satisfactory range of motion of her hips.  Dr. Akbar observed that Plaintiff had some decrease in her upper extremity reflexes, generalized weakness and stiffness of

3

her cervical spine, and mild left-sided thoracolumbar scoliosis with generalized tenderness and stiffness of the lumbar and thoracic spine. (TR 232, 263).

On April 4, 2007 Plaintiff underwent an MRI of the thoracic spine which was negative for scoliosis. (TR 227). That same day Plaintiff had an MRI of the cervical spine which showed mild reversal of the normal cervical lordotic curve determined to either be positional or related to torticollis, minimal hypertrophic vertebral body degenerative changes involving the mid lower cervical spine without disc narrowing, and no intrinsic or extrinsic abnormality of the cervical thecal sac or contents. (TR 228). A subsequent MRI of the cervical spine in October 2007 revealed scoliosis with degenerative changes and reversal of the lordosis. (TR 333). MRI's of the lumbar spine to assess low back pain radiating into the left leg were negative. (TR 229, 334). X-rays of the left ankle and knee taken February 2007 were unremarkable. (TR 262-63). An August 2007 MRI of the left knee was negative except for a small periarticular ganglion cyst along the posterolateral knee. (TR 280, 285-88). X-rays of the left hip and thigh dated November 2007 were unremarkable. (TR 336-37).

On April 10, 2007 Plaintiff was prescribed a glucometer for apparent hyperglycemia related to type II diabetes. (TR 241, 321). In July 2007 Plaintiff was medically evaluated after she fell off a step-stool and injured her lower back while painting. (TR 269). A spinal x-ray taken at the time was normal. (TR 270). On July 28, 2007 Plaintiff presented to the hospital emergency room for mid to low back pain with spasms and complaints that her medication had run out. (TR 277-79). On physical examination she was observed to be alert and oriented times three, with normal reflexes, non-tender full range of motion of the extremities, and no apparent motor or sensory defect. (TR 278).

4

On November 19, 2007 Dr. Jennifer Lombardo, Ph.D evaluated Plaintiff for the state disability determination service. (TR 295). Dr. Lombardo noted that Plaintiff drove herself to the appointment and reported that she was applying for disability because of scoliosis, carpal tunnel syndrome, hyperglycemia, and fibromyalgia. (TR 295, 297). Plaintiff rated her day-to-day pain at a level eight or nine on a ten-point scale and claimed that she sleeps approximately fifteen to sixteen hours each day with no difficulty falling asleep at night. (TR 298). Plaintiff reported feeling fatigued as a side effect of the following medications: Lyrica, Morphine Sulfate, Detrol LA, Flexeril, Wellbutrin SR, Valproic Acid, and Duragesic. (TR 295, 297). Dr. Lombardo noted that Plaintiff reported that she had friends, family support, she interacted well with her family and aunt, and she was enrolled in online college courses with a goal of earning her associates degree in business by February 2008. (TR 296-97). Dr. Lombardo observed that Plaintiff's gait was slowed and she used a cane, she wore braces on both hands, and she had a stiff posture with no observed pain behaviors. (TR 297). Dr. Lombardo found that Plaintiff was intact with reality, her thought process was spontaneous, well-organized, and pertinent, and her affect was blunt. (TR 298). She diagnosed Plaintiff with recurrent, severe major depressive disorder and assigned a GAF of 50. (TR 300).

On November 26, 2007 Dr. Robert Newhouse completed a Psychiatric Review Technique and Mental RFC Assessment. (TR 301-19). In the Psychiatric Review Technique, Dr. Newhouse determined that Plaintiff had mild restrictions in activities of daily living and social functioning, moderate difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation. (TR 313). He also found that the evidence did not establish the presence of "C" criteria. (TR 314). Dr. Newhouse's Mental RFC Assessment shows that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, and in her ability

to maintain attention and concentration for extended periods, but otherwise was not significantly limited.  (TR 317-18).  Dr. Newhouse opined that Plaintiff acknowledged that her depression is related to pain and physical complaints, indicating that her depression may be an adjustment disorder.  He noted that Plaintiff does not have a history of hospitalization for depression and has not been involved in extensive mental health therapy.  (TR 319).  He opined that Plaintiff may have some resultant limitations in concentration and trouble with complex detailed tasks, but otherwise she retained the ability to do simple tasks on a sustained basis.  (TR 319).

In November 2007 Jan Merriman completed a Physical RFC Assessment and found that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently; stand, walk, and sit six hours in an eight-hour work day; with unlimited push/pull abilities.  (TR 340).  In addition, Merriman found that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations.  (TR 341-43).

Dr. Amarish Potnis treated Plaintiff approximately thirteen times between September 2007 and March 2009.  (TR 365-416).  Dr. Potnis observed that Plaintiff had approximately eighty percent of flexion and extension of the lumbar and cervical spine with myofascial tenderness, full strength in the upper and lower extremities, a negative straight leg test, stable gait with cane, and full range of motion of the bilateral knee.  (TR 416).  Dr. Potnis diagnosed Plaintiff with myofascial pain syndrome, fibromyalgia, left knee pain with ganglion cyst, and indicated that although Plaintiff had completed physical therapy her condition did not look promising for work in the future.  (TR 416).  On December 17, 2007 Dr. Potnis observed that Plaintiff was alert and oriented times three, with appropriate mood and mildly flat affect.  (TR 365).  He found that Plaintiff had full strength in the bilateral upper and lower extremities, a negative straight leg test, hip range of motion was

comfortable and pain free, but that Plaintiff had limited range of motion of the cervical and lumbar spine, and shoulder range of motion resistant to passive movements. (TR 365).

On March 13, 2008 Dr. Pontis observed that Plaintiff's activities of daily living had improved, she was feeling better, and she was controlling her pain level quite well. (TR 414). He subsequently found that Plaintiff's right hand and wrist range of motion was full. (TR 413). On June 24, 2008 Dr. Pontis again stated that Plaintiff was doing well, and observed that she had full strength in her upper and lower extremities, full knee and hip range of motion, and lumbar range of motion to eighty degrees of flexion and fifteen degrees of extension. (TR 408).

Plaintiff returned to see Dr. Pontis on September 22, 2008, this time complaining that her medications were not working. Dr. Pontis documented that Plaintiff's walking distance had improved and she was able to do laundry, but otherwise her condition was generally unchanged from prior visits. (TR 404). On January 16, 2009 Plaintiff presented to Dr. Pontis with whole body aches and pains, numbness in the hands, and some numbness in the feet. (TR 400). An electrodiagnostic examination of the bilateral upper extremities revealed electrodiagnostic evidence suggesting mild bilateral carpal tunnel syndrome, with no evidence of cervical radiculopathy, myopathy, or plexopathy in either upper extremity. (TR 401).

## IV.   VOCATIONAL EXPERT TESTIMONY

The Vocational Expert (VE) testified that Plaintiff's past work as a bartender was semi-skilled light work, although heavy as performed, with a specific vocational preparation (SVP) code of 3; past work as a daycare worker was semi-skilled light work, medium as performed, with an SVP code of 4; past work as a waitress was unskilled light work, medium as performed, with an SVP code of 2; past work as a cashier was unskilled light work, medium as performed; past work as a fast

food worker was light work, medium as performed, with an SVP of 2; and past work as an owner/deejay of Premier Entertainment included management positions at a light exertional level, stage technician work at a heavy exertional level, and skilled office work with a heavy exertion level.[1]  (TR 54).

The ALJ asked the VE to consider an individual with the same age, education, and work experience as Plaintiff, who was limited to light work that involved lifting and carrying up to ten pounds frequently and twenty pounds occasionally; standing and walking about six hours in an eight-hour work day, with the remainder of the time spent sitting; work that involves only simple instructions and routine types of tasks, with no exposure to heights or hazards, and only occasional postural activities to include climbing, stooping, kneeling, crawling, balancing, and crouching.  (TR 55).  The VE testified that Plaintiff could perform her past work as cashier and fast food worker, although not as they were previously performed.  (TR 55).  The VE further testified that there were a significant number of jobs in the national economy Plaintiff could perform, such as coast keeper, usher, and counter clerk, comprising approximately 647,000 jobs.  (TR 55).

The VE testified that work would be precluded if the individual needed to use a cane in the workplace because the identified jobs required bilateral usage of the upper extremities with standing.  (TR 56).  The ALJ asked the VE whether jobs would be available if the individual used a cane and

---

[1] "SVP is 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation'....The requisite time is ranked on a scale from one to nine, with nine representing the most time needed to learn a job." *Creech v. UNUM Life Ins. Co. of N. Am.*, 162 Fed. Appx. 445, 459 (6th Cir. 2006) (citing the Dictionary of Occupational Titles (DOT) app C ¶ II (4th Ed. 1991)).  In the DOT, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9.  SSR 00-4p, 2000 WL 1898704, at *3.

was limited to sedentary work that's primarily done sitting down, with lifting up to ten pounds occasionally and less than ten pounds frequently. (TR 56). The VE testified that Plaintiff could perform sedentary jobs with an SVP code of 2, including surveillance system monitor, information clerk, and assembler in an offline, non-hazardous, non-manufacturing environment, comprising 142,000 jobs in the national economy.

Next, the ALJ added to the hypothetical of sedentary jobs with cane usage the limitation of frequent but not constant bilateral fingering. The VE testified that this would have no effect on the jobs identified or their numbers. The VE testified that an employer would not tolerate an employee with the above identified limitations being absent from work three days per month due to her impairments. (TR 57). The VE further testified that the above identified jobs would not be available if the individual needed to nap or rest at unpredictable times outside of the normal work breaks and lunch period. (TR 57). Finally, the VE testified that work would not necessarily be precluded if the individual's concentration was so affected that she would be off-task twenty percent of the time during the course of a week. (TR 57-58).

## V.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since the application date, and suffered from the severe impairments of bilateral carpal tunnel syndrome, a history of a cyst on her knee, myofascial pain syndrome/fibromyalgia, obesity, headaches, and major depression, she did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 15-17). The ALJ determined that Plaintiff retained the RFC to perform sedentary work, with the exception that she can only occasionally climb, stoop, kneel, crawl, balance, and crouch; she can have no exposure to heights or hazards; with frequent but

not constant bilateral fingering; she must have the ability to use a cane in the workplace; and she should do work with only simple instructions and routine tasks. (TR 17-24). The ALJ concluded that Plaintiff was unable to perform past relevant work, but could perform a significant number of jobs in the national economy. (TR 24-25). Consequently, the ALJ found that Plaintiff had not been under a disability as defined in the Social Security Act from the date the application was filed.

## VI.    LAW AND ANALYSIS

### A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.    Framework for Social Security Disability Determinations

10

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff was required to show that:

1.  she was not presently engaged in substantial gainful employment; and
2.  she suffered from a severe impairment; and
3.  the impairment met or was medically equal to a "listed impairment;" or
4.  she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. § 416.920(a)-(f).  If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work.  If she could not, she would be deemed disabled.  20 C.F.R. § 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments.  *Id.* (citations omitted).

## C.    Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ formulated an inaccurate hypothetical that did not accurately portray Plaintiff's moderate deficiencies in maintaining concentration, persistence or pace.  Although Plaintiff challenges the hypothetical, he directs his arguments to the accuracy of the RFC.  Specifically, Plaintiff contends that the RFC failed to account for the entire scope of Plaintiff's moderate limitations, including

Plaintiff's limitations in maintaining persistence or pace.  Plaintiff asks the Court to reverse the Commissioner's decision and remand the case for further evaluation of Plaintiff's ability to sustain work-related activities in a work setting on a regular and continuing basis.

In assessing a claimant's mental abilities, the ALJ is required to first determine the nature and extent of the claimant's mental limitations and restrictions and then determine her RFC for work activity on a regular and continuing basis.  20 C.F.R. § 416.945(c).  The ALJ must assess and make a finding about the claimant's RFC based on all the relevant medical and other evidence in the record.  20 C.F.R. § 416.920(e).

The ALJ is required to present a hypothetical question that includes only those limitations he finds to be credible.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993).  The hypothetical must "accurately portray[] [the plaintiff's] individual physical and mental impairments" in order for the VE's response to constitute substantial evidence.  *Varley*, 820 F.2d at 779.  When the ALJ makes a finding that a claimant has moderate limitations with concentration, persistence or pace, "but does not specifically include that limitation in the hypothetical question, the question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the worker's ... limitations."  *Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009).  In other words, if the ALJ goes beyond the label a psychologist gives to a person in order " 'to develop a complete and accurate assessment' of the patient's mental impairment and possible work opportunities, a VE's reliance on that description is substantial evidence supporting a denial of benefits."  *Adams v. Comm'r*, No. 10-10022, 2011 WL 63495, at *2 (E.D. Mich. Jan. 6, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)). Limitations in concentration, persistence, or

12

pace may result in an inability to meet quotas, stay alert, or work at a consistent rate of speed. *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930-31 (E.D. Mich. 2005).

There is no doubt that in some cases a reference only to simple, routine tasks may not adequately capture a claimant's moderate deficiencies in concentration, persistence or pace. *See e.g., Roberts v. Comm'r*, No. 10-14064, 2011 WL 4407221, at *8 (E.D. Mich. Aug. 8, 2011) (citing cases). However, "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of simple, routine ... work, but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision." *Id. See also Bohn-Morton v. Comm'r*, 389 F.Supp.2d 804, 807 (E.D. Mich. 2005); *Berkowski v. Comm'r*, 652 F.Supp.2d 846,859-60 (E.D. Mich. 2009).

Here, the ALJ determined that Plaintiff had moderate difficulties with concentration, persistence, or pace based on Plaintiff's reports that she wants to sleep all the time, feels fatigued, does not have a lot of patience, and has difficulties with concentration and memory. (TR 16). The ALJ weighed Plaintiff's statements against evidence showing that Plaintiff obtained her GED in 2006, then had the fortitude to enroll in an online associate's degree program and balance her courses, child-rearing duties, and other responsibilities and remain on track to graduate in February 2008. The ALJ also considered evidence showing that Plaintiff developed the curriculum for her children's home schooling, which she claimed was just as rigorous as any public school education, and she paid bills, helped raise her children, and maintained friendships. The ALJ observed that evidence of on-going side effects from medications was not documented in the record. She also reviewed evidence of Plaintiff's treating physician, Dr. Patness, that indicated that Plaintiff was capable of office work.

13

Next, the ALL considered the assessment of Dr. Newhouse that Plaintiff's depression was related to her physical pain, his observation that Plaintiff did not seek on-going mental health treatment, and his conclusion that Plaintiff retained the ability to do simple tasks on a sustained basis. The ALL also considered the opinion of Dr. Lombard that stated among other things that Plaintiff had no psychiatric hospitalizations, was in contact with reality, had good insight and judgment, and demonstrated spontaneous, pertinent, and well-organized thoughts. Evidence shows that Plaintiff does some light housekeeping each day, including loading the dishwasher, wiping tables and counters, grocery shopping, purchasing clothes and supplies for her children, and some laundry. (TR 149). She reported that she watches television, listens to music, works crossword puzzles, finishes what she starts, and generally follows written and spoken instructions well. (TR 152). She also assists her husband in their business by printing his books, budgeting, handling invoices, and balancing his checkbook. (TR 40-41).

The Client Assessment from Child and Family Service opined that Plaintiff had impaired concentration and recent memory. In addition, the Psychiatric Review Technique completed by Dr. Newhouse documented that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods of time. This was consistent with Plaintiff's testimony that she had some challenges with concentration. Dr. Newhouse opined that Plaintiff was not limited in her ability to carry out simple instructions, perform activities within a schedule, maintain regular attendance, sustain an ordinary routine without special supervision, and complete a normal work day and work week without interruptions from psychologically based symptoms. (TR 317-18).

The ALL considered all of the relevant evidence before making her RFC assessment. She then posed hypothetical questions to the VE that took into account those limitations she found

14

credible.  The undersigned finds that the RFC and Step Five finding are supported by substantial evidence in the record and should not be disturbed.  Accordingly, Defendant's Motion for Summary Judgment should be granted, Plaintiff's Motion for Summary Judgment should be denied, and Plaintiff's complaint should be dismissed.

**<u>REVIEW OF REPORT AND RECOMMENDATION</u>**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. An*, 474 U.S. 140 (1985); *Howard v. Secy. of Health & Human Serve.*, 932 F.2d 505 (6th Cir.1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secy. of Health & Human Serve.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 23, 2012                    s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel

of Record on this date.

Dated: July 23, 2012                    s/ Lisa C. Bartlett
                                        Case Manager

16